# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| U.S. BANCORP EQUIPMENT FINANCE, INC. (n/k/a U.S. BANK NATIONAL ASSOCIATION), as successor by merger with Lyon Financial Services, Inc., d/b/a MACHINE TOOL FINANCE GROUP,<br><br>      Plaintiff,<br>v.<br><br>IDEAL MANUFACTURING SOLUTIONS, INC., IDEAL MANUFACTURING ONE, LLC, CHRISTINA STIMAC, and MARK STIMAC,<br><br>      Defendants. | Case No. 11-CV-1132-JPS<br><br><br><br><br><br><br><br>ORDER |

## 1.  BACKGROUND

In connection with a commercial equipment lease, Plaintiff U.S. Bancorp Equipment Finance, Inc. (now known as U.S. Bank National Association) ("U.S. Bank") filed a complaint against Defendants Ideal Manufacturing Solutions, Inc. ("Ideal Inc."), Ideal Manufacturing One, LLC ("Ideal LLC"), Christina Stimac ("Mrs. Stimac") and Mark Stimac ("Mr. Stimac" and, together with Mrs. Stimac, the "Stimacs") (collectively, the "Defendants"),[1] bringing claims of: (i) breach of contract against Ideal Inc.; (ii) breach of personal guaranty against Mrs. Stimac; (iii) breach of personal

---

[1] As explained *infra*, only the Stimacs and Ideal LLC (collectively, the "Responding Defendants") have responded to the complaint.

guaranty against Mr. Stimac; (iv) unjust enrichment against Ideal LLC; (v) conversion against the Defendants; and (vi) detinue against Ideal Inc. and Ideal LLC. (Pl.'s Compl.). U.S. Bank moves for summary judgment on all claims.

2.      FACTS

Except as noted *infra*, the following facts are undisputed among the parties.

2.1      Commercial Lease for Equipment

In October of 2008, Ideal Inc. entered into a lease ("Lease") with a lease originator ("Lease Originator")[2] for a commercial-scale manufacturing laser ("Equipment"). (Resp. of Defs. Ideal LLC, Mr. Stimac and Mrs. Stimac to Pl.'s Proposed Facts (hereinafter "D-Facts") ¶ 8). Mr. Stimac and Mrs. Stimac each personally guaranteed the Lease ("Personal Guarantees"). (Resp. of U.S. Bank to Proposed Facts of Defs. Ideal LLC, Mr. Stimac and Mrs. Stimac (hereinafter "P-Facts") ¶ 4). In accordance with their respective business models, U.S. Bank funded the Lease by purchasing the Equipment and the Lease Originator assigned "all of its right, title and interest" in the Lease, the Personal Guarantees and the Equipment to U.S. Bank. (D-Facts ¶ 11).[3] On the same day the Lease was executed, Ideal Inc. executed a certificate acknowledging that the Equipment was delivered in good condition and accepting same. (D-Facts ¶ 13).

---

[2] The Lease Originator is not a party to this action.

[3] It is similarly undisputed among U.S. Bank and the Responding Defendants that "U.S. Bank has a perfected, first priority security interest in the Equipment." (D-Facts ¶ 47).

The Lease provides for sixty (60) consecutive, monthly payments of $4,944.40 and, after making sixteen (16) of these payments, Ideal Inc. ceased making payments. (D-Facts ¶¶ 14-15). Non-payment constitutes an event of default under the Lease. (D-Facts ¶ 16). "In the event of default, U.S. Bank is entitled to late charges, the accelerated balance of all lease payments and other payments due, including future payments discounted at the rate of 3% per annum for present value, prejudgment interest at the rate of 1% per month and possession of the Equipment." (D-Facts ¶ 17).

U.S. Bank has fully-performed its obligations under the Personal Guarantees and the Lease. (D-Facts ¶ 19). However, other than the aforementioned sixteen (16) payments, none of the Responding Defendants has made payments in response to demands by U.S. Bank under the Lease and the Personal Guarantees. (D-Facts ¶ 18).

2.2     Movement of Equipment to Mexico

Ideal Inc. "was a metal stamping company with a manufacturing facility in Wisconsin." (D-Facts ¶ 22). Mrs. Stimac was Ideal Inc.'s "president" and Mr. Stimac was the "operations manager." (*Id.*). The Stimacs were the sole shareholders. (*Id.*).

In 2005, the Stimacs formed Ideal Manufacturing Solutions, de Mexico ("Ideal Mexico"), a Mexican company formed, organized and existing solely under the laws of Mexico as a *Sociedad de Responsibilidad Limitada de Capital Variable.* (D-Facts ¶ 23). Mr. Stimac and Mrs. Stimac were each "approximately fifty percent (50%) shareholders." (*Id.*).

Also in 2005, Ideal Inc. relocated certain of its equipment to Ideal Mexico's manufacturing facility (the "Mexican Facility") located at Rio Colorado Number 3, Entre Juan Zavala y Av. Empleado postal, Colonia Las

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 3 of 23   Document 47

Fuentes in the city of Matamoros, State of Tamaulipas, Mexico, and Ideal Mexico utilized such equipment in its manufacturing lines. (D-Facts ¶¶ 24-25).

The Lease provided for the Equipment to be located at an address in Brownsville, Texas, and Ideal Inc. executed a Texas Sales and Use Tax Exemption Certificate, however, Ideal Inc. did not have manufacturing facilities in the State of Texas. (D-Facts ¶¶ 26-28). The Equipment was delivered to Texas sometime in the second-half of 2008 and was subsequently transferred to the Mexico Facility where it has been located since January 23, 2009. (D-Facts ¶¶ 29-30). Mr. Stimac made the decision to move the Equipment to Mexico. (P-Facts ¶ 12).

The Lease requires the prior written consent of the lessor before the Equipment may be moved from the Brownsville, Texas, location and prohibits assignment, sale, transfer or sublease of the Equipment. (D-Facts ¶ 32). Neither U.S. Bank nor the Lease Originator have consented in writing to movement of the Equipment to Mexico. (D-Facts ¶ 33). The Equipment remains in the physical possession of Ideal Mexico. (P-Facts ¶ 24).

2.3    Failure of Ideal Inc.

Ideal Inc. had financial difficulties and ultimately went out of business in 2010. (D-Facts ¶38). Ideal Inc.'s equipment, *except the Equipment*, was surrendered to Associated Bank. (D-Facts ¶ 39).

2.4    Creation of Ideal LLC

Formed in 2010 as a limited liability company registered under the laws of the State of Texas, Ideal LLC operates a facility in Brownsville, Texas, however, that facility is not a manufacturing facility. (D-Facts ¶¶ 3, 41-42 ); (P-Facts ¶ 18).

Mr. Stimac has been the "principal manager" of Ideal LLC and "made all business decisions" for Ideal LLC. (D-Facts ¶ 40). As of June of 2012, Mr. Stimac is the sole member of Ideal LLC. (*Id.*).

Ideal LLC is not a party to the Lease regarding the Equipment. (P-Facts ¶ 17).

3.    PROCEDURAL BACKGROUND

In an order dated November 1, 2012, the Court observed that claims (i), (ii) and (iii) *supra* each allege a breach of contract and, therefore, require the Court to interpret the Lease and the Personal Guarantees. The Court noted that the Lease and the Personal Guarantees provide for the "exclusive jurisdiction" of Ohio Courts (the "Choice-of-Venue Clauses") and directed the parties to brief the Court as to why the Court should continue to consider the contractual claims in this case in light of the Choice-of-Venue Clauses.

In response, the Stimacs' counsel explains that they "did not object to jurisdiction in this Court, and did not seek to have this case transferred to the courts in the State of Ohio, because [they] are of limited financial resources." (Docket #44). Moreover, the Stimacs' counsel explains that they will "respectfully defer to the Court's discretion on this matter and will reverently proceed in compliance with the Court's final order regarding the same." (*Id.*). U.S. Bank takes the position that it has waived the Choice-of-Venue Clauses by not filing suit in Ohio. (Docket #45, 3).

The Court finds that the parties have waived the Choice-of-Venue Clauses. Fed. R. Civ. P. 12(b)(3); Fed. R. Civ. P. 12(h)(1); *Automobile Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746-747 (7th Cir. 2007). Therefore, the Court will address the contractual claims in the course of its analysis set forth below.

4.     SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine dispute of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

5.     DISCUSSION

5.1     Choice-of-Law

The parties' citizenship is diverse within the meaning of 28 U.S.C. § 1332 (a)(1), the amount-in-controversy requirement of § 1332 is satisfied, and venue pursuant to 28 U.S.C. § 1391 is proper. (D-Facts ¶¶ 1-7).

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Klaxon Co. V. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); In *re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009).

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 6 of 23   Document 47

### 5.1.1 Choice-of-Law: Claims (ii) and (iii) (each for Breach of Personal Guaranty)[4]

This Court sits in Wisconsin and Wisconsin state law recognizes "freedom to contract for choice of law" with the "qualification" that "parties cannot, by contact, override fundamental policies of the state whose law would be applicable absent the choice of law provision." *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶ 25 (citations and quotations omitted).

The Personal Guarantees signed by the Stimacs provide that they are "governed by the laws of the state of Ohio." (Docket #1-1, 6 and 7). Application of Ohio law to U.S. Bank's breach of personal guaranty claims is uncontested. (Resp. of the Responding Defendants to Pl.'s Mot. for Summ. J. (hereinafter "Defs.' Resp. Br.") 5). Therefore, the Court will apply Ohio law to those claims.[5]

### 5.1.2 Choice of Law: Claim (iv) (unjust enrichment)

U.S. Bank contends that the Court should apply Ohio law to its unjust enrichment claim, however it provided parallel citations to Wisconsin state law because, in U.S. Bank's view, "the application of either law would yield the same result." (Pl.'s Br. 4-5). Ideal LLC argues in favor of applying Wisconsin law. (Defs.' Resp. Br. 9). Either way, the first element of an unjust enrichment claim is the same: a benefit conferred upon the defendant by the plaintiff. *Puttkammer v. Minth*, 83 Wis.2d 686, 688-689 (Wis. 1978); *Jones v.*

---

[4] As discussed *infra* in Section 5.2, Claim (i) – the breach of contract claim against Ideal Inc. – has not been contested.

[5] The Court is unaware of any relevant fundamental public policy that would militate against enforcing this choice-of-law clause.

*Jones*, 179 Ohio App.3d 618, 629 (Ohio Ct. App. 2008). The Court's analysis on the merits of this claim *infra* begins and ends at this first element.

### 5.1.3   Choice of Law:  Claim (v) (conversion)

"The first rule in Wisconsin choice of law rules is that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis.2d 561, 588 (Wis. 2002) (internal citations and quotations omitted). The five factors to consider in this connection are: "(1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interests; and (5) Application of the better rule of law." *Id.*, 588-589.

Here, Wisconsin is the common denominator among the defendants because Wisconsin is: (i) both business entities' principal place of business; and (ii) the Stimacs' state of legal residence. (D-Facts ¶¶ 2-5). Neither U.S. Bank nor the Responding Defendants argues that the aforementioned five factors militate towards applying the law of another state. Rather, U.S. Bank asks the Court to apply Minnesota state law because Minnesota is its principal place of business and therefore, it argues, that is the location of the injuries alleged. However, U.S. Bank concedes that application of Wisconsin law yields the same result. (Pl.'s Br. 5-6). The Responding Defendants request Wisconsin law. (Defs.' Br. 7-8). Accordingly, the Court will apply Wisconsin law to U.S. Bank's conversion claim. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state….").

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 8 of 23   Document 47

5.2     Claim (i): Breach of Contract (against Ideal Inc.)

U.S. Bank asks the Court to enter a default judgment against Ideal Inc. "in the amount of $196,204.68, plus interest in the amount of $60,252.34, plus attorneys' fees and costs in the amount of $33,943.82, for a total judgment in the amount of $290,400.84" as to the first claim (Docket #32, 2), because Ideal Inc. has failed to plead or otherwise defend. (Docket #33-11).

"There are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).

A default is established "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise…." Fed. R. Civ. P. 55(a). The Clerk of Court must then enter the default. *Id.*

Failure to plead or otherwise defend implicates Fed. R. Civ. P. 8(b)(6) which reads, in relevant part, "[a]n allegation–other than one relating to the amount of damages–is admitted if a responsive pleading is required and the allegation is not denied." "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 at 447-48 (2d ed. 1983); *See Black v. Lane*, 22 F.3d 1395, 1399.

A court asked to enter a default judgment, once satisfied that the complaint states a claim for relief, turns to the question of damages. "A judgment by default may not be entered without a hearing on damages unless…the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits."

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 9 of 23   Document 47

*Dundee Cement co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

Here, it appears that Mr. Stimac, in his capacity as registered agent for Ideal Inc., was duly served with process in this case on January 5, 2012. (Docket #7). Therefore, a responsive pleading was due by January 26, 2012. Fed. R. Civ. P. 12(a)(1)(A)(I). However, Ideal Inc. has failed to plead or otherwise defend (D-Facts ¶ 52); (Defs.' Resp. Br. 2, n.1); (Docket #33-11). Therefore, the Court will direct the Clerk of Court to enter Ideal Inc.'s default. Fed. R. Civ. P. 55(a).

The Court finds that the first claim in U.S. Bank's complaint – breach of contract against Ideal Inc. – states a claim for relief. (Pl.'s Compl.). The requested damages – $196,204.68, plus interest in the amount of $60,252.34 – appear to comport with the terms of the Lease. Furthermore, the Lease provides for the lessee to pay enforcement costs (including reasonable attorneys fees) in the event of default. (Docket 1-1, 3). The Court finds U.S. Bank's request of costs (including attorneys fees) in an amount equal to $33,943.82 to be reasonable.

In light of the analysis set forth above, the Court finds it appropriate to, and therefore will, grant U.S. Bank's application for a default judgment against Ideal Inc. for breach of the Lease. Therefore, the Court will order the Clerk of Court to enter a default judgment against Ideal Inc. on the first claim in U.S. Bank's complaint with damages of $196,204.68, plus interest in the amount of $60,252.34 and costs (including attorneys fees) of $33,943.82 for a total judgment in the amount of $290,400.84. Fed. R. Civ. P. 55.

5.3     Claims (ii) and (iii):  Breach of Personal Guaranty (against Mrs. Stimac and against Mr. Stimac)

"To recover upon a breach-of-contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294 (Ohio Ct. App. 2007) (internal citations and quotations omitted). "In order to prove a breach by the defendant, a plaintiff must show that the defendant did not perform one or more of the terms of the contract." *Id.* (internal citations and quotations omitted).

Here, the Stimacs do not dispute that: (i) Ideal Inc. entered into the Lease (D-Facts ¶8); (ii) the Stimacs provided the Personal Guarantees – "whereby they guaranteed all of Ideal [Inc.]'s obligations under the Lease"– in that connection (D-Facts ¶ 9); (iii) U.S. Bank is now the counter-party to the Lease and the Personal Guarantees following assignment by the Lease Originator (a non-party) to U.S. Bank (D-Facts ¶ 11); (iv) U.S. Bank "has fully performed its obligations" under the Lease and the Personal Guarantees (D-Facts ¶ 19); (v) certain payments due under the Lease have not been made, notwithstanding demand for payment, and such non-payment constitutes an event of default under the Lease (D-Facts ¶¶ 9, 14-16, 18); (vi) in the event of default under the Lease, U.S. Bank is entitled to certain amounts as damages under the Personal Guarantees (D-Facts ¶¶ 9, 17); and (vii) despite demands by U.S. Bank, Mr. Stimac and Mrs. Stimac have each failed to make payments due under the Personal Guarantees. (D-Facts ¶¶ 9, 17-18).

There is no genuine dispute as to the facts set forth above in this subsection, rather the Stimacs raise an unconscionability defense regarding the Lease and say that they "should never have to pay" under the Personal

Case 2:11-cv-01132-JPS  Filed 11/21/12  Page 11 of 23  Document 47

Guarantees on account of the Lease's unconscionability. (Defs.' Resp. Br. 8-9). In particular, the Stimacs assert that: (i) the Lease required Ideal Inc. "to waive its right to revoke acceptance of the Equipment before the Equipment was even delivered to the Texas location"; (ii) the Lease Originator required Ideal Inc. "to certify acceptance of the Equipment and waive any rights to reject the Equipment for being different than advertised or defective, before the Equipment was even delivered"; and (iii) the equipment, as-delivered, "didn't work." (*Id.*). In the Stimacs' view, "this forced early 'waiver' by the [Lease Originator] left Ideal [Inc.] without any remedy when the Equipment did not operate properly at the Texas location." (*Id.*). With regard to the first factual assertion above – that the Lease requires waiving Ideal Inc.'s "right to revoke acceptance of the Equipment" before the Equipment is delivered – the Stimacs do not cite any provision in the lease as evidence. As far as the second factual assertion – regarding the Lease Originator requiring waiver – the only evidence cited by the Stimacs is an affidavit by Mr. Stimac that fails to state that it is based on personal knowledge as required by Fed. R. Civ. P. 56(c)(4). (Docket 38-1).

Unconscionability is an affirmative defense. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 535 (7th Cir. 2011). "The Federal Rules of Civil Procedure require a defendant to plead all his affirmative defenses in the answer to the complaint. Fed. R. Civ. P. 8(c). Any defense not pleaded is waived." *Pinto Trucking Service, Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981). In their answer, the Stimacs do not explicitly raise unconscionability as an affirmative defense but rather purport to "allege and preserve all Affirmative Defenses otherwise deemed waived, if not plead pursuant to Fed. R. Civ. P. 8, in order to conduct discovery" and "reserve the

right to amend and supplement th[eir] list of Affirmative Defenses as necessary through ongoing discovery." (Docket #9, 8). Because, as discussed below, the unconscionability defense fails on the merits, the Court need not determine the effect of the Stimacs' affirmative defense "catch-all."

As to the merits of the Stimacs' unconscionability defense, the Court first observes that they fail to cite even a single case to support their legal propositions. Moreover, as U.S. Bank points out, the Stimacs "do not allege that they were under any duress of any kind. Presumably, they could have waited until they were satisfied with the Equipment, and if [the Lease Originator] was not willing to ship the Equipment, they could have identified a different financier." (Docket #40, 5). In any event, the Court finds the Stimacs' assertion that the "forced early 'waiver' by the [Lease Originator] left Ideal [Inc.] without any remedy when the Equipment did not operate properly at the Texas location" unreasonable; a reasonable person cries foul when broken or inoperative equipment is delivered, not years later in the context of a summary judgment motion. (Defs.' Resp. Br. 9).

The Supreme Court of Ohio has taken the view that "although a commercial purchaser is not doomed to failure in pressing an unconscionability claim, findings of unconscionability in a commercial setting are rare." *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40 (1989). In contrast to a scenario where the personal guarantors are generous but unwitting relatives or neighbors who decide to backstop their relative or friend in a show of blind altruism, Mrs. Stimac was the "president" of Ideal Inc. and Mr. Stimac was the "operations manager." (D-

Facts ¶ 22).[6] As the human element leading Ideal Inc., the Stimacs undertook in their personal capacities to backstop the obligations of the corporate abstraction whose reins they held. Therefore, the Personal Guarantees were emphatically part of the commercial setting of the Lease. Having made no attempt to show how their experience constitutes the "rare" exception of which the Supreme Court of Ohio speaks, the Court is obliged to find the Stimacs defense of unconscionability unavailing.

In light of the analysis set forth above, the Court is obliged to and will grant summary judgment to U.S. Bank on its second and third claims with damages of $196,204.68, plus interest in the amount of $60,252.34 and costs of $33,943.82 (including attorneys fees of $31,170.00 which the Court finds to be reasonable) for a total judgment in the amount of $290,400.84.

5.4    Claim (iv): Unjust Enrichment (against Ideal LLC)

In its fourth claim, U.S. Bank asserts that Ideal LLC is unjustly enriched by the Equipment. The first element of an unjust enrichment claim is a benefit conferred upon the defendant by the plaintiff. *Puttkammer v. Minth*, 83 Wis.2d 686, 688-689 (Wis. 1978); *Jones v. Jones*, 179 Ohio App.3d 618, 629 (Ohio Ct. App. 2008).

Here, the Lease is clear: only Ideal Inc. has a conditional right to use the Equipment owned by U.S. Bank. In other words, by entering into the

---

[6] In addition, the Stimacs assert that the Personal Guarantees should have clearly and conspicuously spelled out the ramifications under the Lease of certifying acceptance of the Equipment before Ideal Inc. received it. This argument does not carry weight. As the executive leadership, as it were, of Ideal Inc., the Stimacs had fiduciary duties to Ideal Inc. and therefore were obliged to do a modicum of diligence as to the Lease and so they should have been apprised of the interworkings of these agreements. They are not the unwitting neighbors of lore who blindly backstopped their friend's new business venture.

lease, U.S. Bank conferred a conditional benefit only on Ideal Inc. In turn, Ideal Inc. arguably conferred a benefit on Ideal Mexico by transferring the equipment to the Mexican Facility.[7] For these reasons and the reasons set forth below, the Court is unable to find on the present state of the record that U.S. Bank conferred a benefit upon Ideal LLC.

Mr. Stimac owns and operates Ideal LLC and the Stimacs own Ideal Mexico. Ideal LLC buys raw materials which it then sends to Ideal Mexico which utilizes the Equipment to convert the raw materials into some other form. Whether Ideal LLC in fact pays Ideal Mexico for converting the raw material is genuinely in dispute. (Docket #38-2, 10).

U.S. Bank points to posturing on the website of Ideal LLC which U.S. Bank suggests should be read to mean that Ideal LLC and Ideal Mexico are functionally one and the same. However, U.S. Bank does not present evidence that the corporate formalities of the two entities are not followed. In the absence of such evidence, the record shows only two distinct legal entities conducting business with one another. In the context of an unjust enrichment claim, this formal legal distinction between the Ideal LLC and Ideal Mexico entities – two distinct legal abstractions – has dispositive effect notwithstanding their common ownership.

Accordingly, on the state of the record, the Court is unable to find that the first element of U.S. Bank's fourth claim is satisfied. Therefore, the Court is obliged to and will deny U.S. Bank's motion for summary judgment as to that claim.

_____

[7] U.S. Bank admits that Ideal LLC does not physically possess the Equipment; rather physical possession lies with Ideal Mexico at the Mexican Facility.

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 15 of 23   Document 47

5.5    Claim (v):  Conversion (against the Defendants)

U.S. Bank's fifth claim is that the Defendants have converted the Equipment. "Conversion is often defined as the wrongful exercise of dominion or control over a chattel." *Production Credit Ass'n of Madison v. Nowatski*, 90 Wis. 2d 344, 353-354 (Wis. 1979) (citation omitted). "The elements of conversion are: (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property." *H.A. Friend & Co. v. Professional Stationery, Inc.*, 294 Wis.2d 754, 763 (Wis. Ct. App. 2006). However, "conversion does not include wrongful intent or knowledge that what is being taken rightfully belongs to another." *Bruner v. Heritage Companies*, 225 Wis.2d 728, 736-737 (Wis. Ct. App. 1999). With regard to damages, "[t]he general rule followed in Wisconsin is that…the plaintiff may recover the value of the property at the time of the conversion plus interest to the date of the trial." *Trager v. Sperberg*, 256 Wis. 330, 333 (Wis. 1950). U.S. Bank requests punitive damages and cites to Wis. Stat. 895.043(3) – standard of conduct meriting punitive damages – which provides that "[t]he plaintiff may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." Below, the Court will analyze U.S. Bank's claim for conversion as against each of the Defendants in turn.

Recognizing, as discussed *supra*, that Ideal Inc. is in default for purposes of Fed. R. Civ. P. 55(a), the Court finds that U.S. Bank's complaint adequately states a claim for relief in regards to conversion of the Equipment by Ideal Inc. (Pl.'s Compl.). Therefore, the Court will grant U.S. Bank's application for a default judgment against Ideal Inc. for conversion of the

Equipment. Accordingly, the Court will order the Clerk of Court to enter a default judgment against Ideal Inc. on the fifth claim in U.S. Bank's complaint with damages in an amount equal to the value of the Equipment *at the time of the conversion* plus interest. *Trager*, 256 Wis. at 333; Fed. R. Civ. P. 55. U.S. Bank has not submitted the value of the Equipment *at the time of conversion by Ideal Inc.*, so the Court will grant it leave to do so in a follow-on submission limited to that issue to be filed not later than December 14, 2012. Such amount, as determined by the Court, will then be added to the judgment.

The most natural conversion claim, the Court would note, would be as against Ideal Mexico because the Equipment remains in the physical possession of Ideal Mexico. (P-Facts ¶ 24). However, U.S. bank has not brought that claim, presumably due to the jurisdictional issues it would present. Instead, U.S. Bank seeks to proceed against the Responding Defendants.

With regard to Ideal LLC, U.S. Bank argues that Ideal LLC "is the successor to Ideal [Inc.] and it controls the Equipment in Mexico." (Docket #40, 10). U.S. Bank fails on the first element of its conversion claim – intentional control or taking of property belonging to another – because: (i) *Mr. Stimac* made the decision to move the Equipment to Mexico (P-Facts ¶ 12); (ii) Ideal LLC was formed *after* the Equipment arrived in Mexico; (iii) the Equipment has since been and remains in the physical possession of *Ideal Mexico* (P-Facts ¶ 24); and (iv) although Ideal Mexico converts raw materials for Ideal LLC, U.S. Bank does not present evidence that the corporate formalities of Ideal LLC and Ideal Mexico are not followed and so the record shows only two distinct legal entities conducting business with one another.

Again, like in claim (iv) *supra*, this distinction has dispositive effect notwithstanding their commonality in ownership. Therefore, the Court is obliged to and will deny U.S. Bank's claim against Ideal LLC for conversion.

With regard to the Stimacs, the Court finds it conceptually beneficial to analyze the conversion claims against them at two points in time – (1) the decision to move the Equipment to Mexico; and (2) the Equipment's presence at Ideal Mexico – because U.S. Bank brings its claim in general terms.

As to the decision to move the Equipment to Mexico, the parties agree that Mr. Stimac made that decision and Mrs. Stimac was not involved. (Docket #41, ¶29). Therefore, Mrs. Stimac was not wrongfully exercising dominion over the Equipment at the time it was moved to Mexico. Mr. Stimac's defense – his disputed assertion that he received oral permission from an employee of the Lease Originator to move the Equipment to Mexico – does not sound *in contract* (because the contract requires *prior written* consent) but is sufficient *in tort* to constitute a genuine dispute of material fact as to the second element of a claim for conversion (non-consent of the owner).

As to the Equipment's presence at Ideal Mexico, there is no genuine dispute as to the second and third elements of a conversion claim – substantial interference with rights of the owner without the owner's consent – because: (i) U.S. Bank has title to (and a perfected first-priority security interest in) the Equipment; (ii) non-payment is an independent basis for default under the Lease (irrespective of whether or not U.S. Bank or the Lease Originator consented to the Equipment's relocation); (iii) U.S. Bank is entitled to, *inter alia*, possession of the Equipment upon an event of default; (iv) the Stimacs have not returned the Equipment despite U.S. Bank's

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 18 of 23   Document 47

demand for return of the Equipment; and (v) the Equipment is physically located outside the prescriptive jurisdiction of the United States (e.g., in Mexico). Accordingly, the Court's analysis will focus on the first element: intentional control or taking of property belonging to another.

U.S. Bank argues that the Stimacs intentionally control the Equipment (and, thereby, exercise the requisite wrongful dominion over it) because: (i) the Equipment is located at Ideal Mexico; (ii) the Stimacs collectively own 100% of Ideal Mexico; and (iii) the Stimacs have not caused Ideal Mexico to return the Equipment to U.S. Bank.

The Wisconsin Supreme Court has recognized that "an individual is personally responsible for his own tortious conduct." *Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis.2d 683, 692 (Wis. 1979). "In the case neither of a business corporation nor of a professional corporation does limited liability shield the personal assets of investors who cause the corporation to commit a tort or other unlawful act.…It is a common misunderstanding that the principle of limited liability protects the shareholders and officers of a corporation for liability for their own wrongful acts. It does not. It protects them from *derivative* liability, that is, from being called to account for the wrongs of the corporation." *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737 (7th Cir. 2004).

The Stimacs offer two defenses. First, the Stimacs argue that "U.S. Bank cannot turn to tort remedies to recover economic loss which is recoverable under a contract cause of action." (Docket #37, 12). However, the Stimacs do not cite any authority for this proposition of law.  This defense fails because, under Wisconsin law, a secured party may enforce its security interest through conversion. *Farm Credit Bank of St. Paul v. F&A Dairy*, 165

Wis.2d 360, 371 (Wis. Ct. App. 1991). Second, the Stimacs argue that "a material issue of fact exists as to whether the defendants have refused to transfer the property back to the United States. Mark Stimac was informed that pursuant to existing rules of customs it would be nearly impossible to transfer the Equipment back to the U.S. without first satisfying all existing obligations to Mexican entities relating to the Equipment." (Docket #37, 15). The only evidence cited in support is an affidavit by Mr. Stimac that alleges, in relevant part, "[t]hat due to customs requirements it would be extremely difficult, if not impossible, to export the Equipment from Mexico." (Docket #38-1). U.S. Bank "disputes all of the facts offered through the [a]ffidavit on the grounds that the proposed facts are not supported by admissible evidence." (Docket #40, 2). The Court need not reach the admissibility of the affidavit because the substance of it, even if admissible, is only a bald assertion and a bald assertion does not create a genuine dispute of material fact as to the element in question – intentional control of (wrongful exercise of dominion over) U.S. Bank's Equipment. *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) (holding that unsubstantiated bald and self-serving assertions in affidavits are not sufficient to create a material issue of fact). Therefore, the Court is obliged to and will grant U.S. Bank summary judgment on its conversion claims as against each of Mr. Stimac and Mrs. Stimac.

U.S. Bank submits that the Equipment has a fair market value of $160,000.00 and cite an expert report by a Senior Equipment Analyst in the Valuation Services Group of the Asset Management Department of U.S. Bank in support. (Docket #33-10). Defendants simply object without citing any countervailing evidence in support of their objection. (Docket #38, 14-15). Based upon the evidence in the record, the Court finds that the fair market

Case 2:11-cv-01132-JPS   Filed 11/21/12   Page 20 of 23   Document 47

valuation of $160,000.00 is reasonable and will award that amount, with interest, as damages.

Finding that the record before the Court, viewed in its totality, does not merit punishment and that consequential damages will suffice, the Court is obliged to and will deny U.S. Bank's request for punitive damages as to its conversion claims.

5.6    Claim (vi):  Detinue (against Ideal Inc. and Ideal LLC)

Finally, U.S. Bank brings what it titles a "detinue" claim against each of Ideal Inc. and Ideal LLC. U.S. Bank asserts that "[t]he claim of detinue is now encompassed by the replevin statute" and cites to Wis. Stat. § 810.02. This same section is referenced by Ideal LLC in the course of its arguments in defense.

Chapter 810 of the Wisconsin Statutes is titled "Replevin" and § 810.01 states that "[t]he plaintiff *in a replevin action* may claim the delivery of property *prior to final judgment* in the manner provided in this chapter." (emphasis added).  Section 810.02 authorizes a Court to entertain an application for "[a]n order directing the return of property to the plaintiff at any time before final judgment *in a replevin action….*" (emphasis added). In turn, § 810.03 directs the sheriff to "take the property from the defendant or such persons as are acting on behalf of, in concert with or under control of the defendant, and deliver possession of the property to the plaintiff" once an order issues under § 810.02 and certain measures to protect the defendant are in place.

Here, U.S. Bank's applications under § 810.02 fail because U.S. Bank has not pled an action for replevin as the statutory framework contemplates. U.S. Bank's attempt to cast its own gloss on *Ronge v. Dawson*, 9 Wis. 246 (Wis.

1859), to argue that § 810.02 can be conceptually severed from the other sections in Wis. Stat. Ch. 810 (Replevin) to constitute a stand-alone detinue claim is contrary to the plain reading of those statutory sections as in effect in 2012. Therefore, the Court is obliged to and will deny U.S. Bank's applications under Wis. Stat. § 810.02 for orders that Ideal Inc. and Ideal LLC return the Equipment to U.S. Bank.[8]

6.    CONCLUSION

For the foregoing reasons, U.S. Bank's motion for summary judgment (Docket #32) on all counts will be granted in part and denied in part.

Accordingly,

IT IS ORDERED that Plaintiff U.S. Bank's motion for summary judgment (Docket #32) be and the same is hereby GRANTED in part and DENIED in part in accordance with the analysis set forth above;

IT IS FURTHER ORDERED that Plaintiff U.S. Bank have and recover $290,400.84 (comprising $196,204.68, plus interest in the amount of $60,252.34 and costs (including attorneys fees) of $33,943.82) jointly and severally from Defendant Ideal Manufacturing Solutions, Inc. (in default), Defendant Mark Stimac and Defendant Christine Stimac for their respective breaches of contracts;

IT IS FURTHER ORDERED that Plaintiff U.S. Bank is granted leave to submit the value of the Equipment *at the time of conversion by Defendant*

---

[8] As discussed *supra*, Ideal Inc. is in default within the meaning of Fed. R. Civ. P. 55(a). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 at 447-48 (2d ed. 1983); *See Black v. Lane*, 22 F.3d 1395, 1399.

*Ideal Manufacturing, Inc.*, such amount shall be submitted to the Court, in writing, not later than December 14, 2012; and

IT IS FURTHER ORDERED that Plaintiff U.S. Bank shall have and recover $160,000.00 (together with interest) jointly and severally from Defendant Mark Stimac and Defendant Christina Stimac for conversion of the Equipment.

Dated at Milwaukee, Wisconsin, this 21st day of November, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge